## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DONNA J. D.,**[1]

     **Plaintiff,**

                                    **Civil Action 2:21-cv-5531**

     **v.**                           **Judge James L. Graham**

                                      **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Donna J. D. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

## I.     BACKGROUND

Plaintiff protectively filed her DBI and SSI applications in November 2016 alleging that she had been disabled since July 11, 2016. (R. 365–71, 372–78.) Plaintiff's applications were

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

denied initially (R. 88, 89), and on reconsideration (R. 122, 123). A telephonic hearing was held on November 13, 2018, before Administrative Law Judge Charles Woode ("ALJ Woode"). (R. 33–63.) After the hearing, ALJ Woode issued a non-disability determination on January 3, 2019. (R. 156–76.) The Appeals Council remanded the matter on January 3, 2020 (R. 177–810), and Administrative Law Judge Jerry Meade ("ALJ Meade") held a second hearing on July 9, 2020 (R. 64–87), before issuing a second unfavorable determination on September 25, 2020 (R. 9–32). That second determination became final when the Appeals Council denied Plaintiff's request for review on September 16, 2021. (R. 1–6.)

Plaintiff seeks judicial review of that final determination, and alleges that remand is warranted for three reasons. First, Plaintiff alleges that ALJ Meade erred by failing to find that her fibromyalgia was a medically determinable impairment. (Pl.'s Statement of Errors 4–5, ECF No. 11.) Second, Plaintiff alleges that ALJ Meade's residual functional capacity ("RFC")[2] was not supported by substantial evidence because ALJ Meade erred when evaluating opinion evidence. Specifically, Plaintiff alleges that ALJ Meade erred when evaluating an opinion from her treating physician. (*Id*. at 5–9.) In addition, Plaintiff alleges ALJ Meade erred by determining that the state agency reviewing psychologists' opinions were persuasive, but then failing to incorporate their opined limitations into her RFC or explaining why he did not incorporate them. (*Id*. at 9–13.) The undersigned concludes that these contentions of error lack merit.

## II.     THE ALJ'S DECISION

On September 25, 2020, ALJ Meade issued the unfavorable determination. (R. 9–32.) At

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

step one of the sequential evaluation process,[3] ALJ Meade found that Plaintiff had not engaged in substantial gainful activity since July 11, 2016, the alleged date of onset. (R. 15.) At step two, ALJ Meade found that Plaintiff had the following severe impairments: obesity, osteoarthritis; degenerative disc disease of the cervical spine and lumbar spine; coronary artery disease with a remote history of myocardial infarction; major depressive disorder; and posttraumatic stress disorder. (*Id.*) At step three, ALJ Meade found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.)

Before proceeding to step four, ALJ Meade assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally climb ladders, ropes, and scaffolds. She can frequently stoop. The claimant can understand,

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

remember, and carry out simple instructions. She is limited to low-stress jobs (defined as jobs that only require occasional decision making; have only occasional changes in the work setting; and do not involve fast-paced production requirements). She can frequently interact with the public, co-workers, and supervisors.

(R. 19.)

At step four, ALJ Meade found that Plaintiff was unable to perform any of her past relevant work. (R. 24.) At step five, ALJ Meade relied on a vocational expert's ("VE's") testimony to find that given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) ALJ Meade, therefore, concluded that Plaintiff was not disabled from July 11, 2016, through the date of the determination. (R. 25–26.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that

finding 'even if there is substantial evidence in the record that would have supported an opposite

conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109

F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial  evidence

standard, "a decision of the Commissioner will not be upheld where the SSA fails to  follow its

own regulations and where that error prejudices a claimant on the merits or deprives  the claimant

of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.     ANALYSIS

### A.     ALJ Meade's Assessment of Fibromyalgia at Step Two

As previously explained, Plaintiff alleges that ALJ Meade erred at step two by failing to

find that her fibromyalgia constituted a medically determinable impairment. The undersigned

finds that this contention of error lacks merit.

At step two, an ALJ must consider whether a claimant's impairment constitutes a

"medically determinable impairment," *i.e.*, an impairment that results from anatomical,

physiological, or psychological abnormalities that can be shown by medically acceptable clinical

and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1521, 404.1505, 404.1520(a)(4)(ii).

Social Security Ruling ("SSR") 12-2p provides guidance on how [the Commissioner will]

develop evidence to establish that a person has a medically determinable impairment (MDI)

of fibromyalgia (FM), and how [the Commissioner will] evaluate [fibromyalgia] in disability

claims and continuing disability reviews under titles II and XVI of the Social Security Act

(Act)." *Titles II & XVI: Evaluation of Fibromyalgia,* SSR 12-2p, 2012 WL 3104869, at *1 (S.S.A.

July 25, 2012); *see also Herzog v. Comm'r. of Soc. Sec.*, No. 2:16-cv-244, 2017 WL 4296310, at

*2 (S.D. Ohio Sept. 28, 2017). To establish a medically determinable impairment of fibromyalgia under SSR 12-2p, a claimant must have a positive diagnosis of fibromyalgia from an acceptable medical source and produce documented evidence that meets either: 1) the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 ACR Criteria") or 2) the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 ACR Criteria"). 2012 WL 3104869, at *2.

Under the 1990 ACR criteria, fibromyalgia may be found to constitute a medically determinable impairment if the claimant has documented evidence of the following three issues:

1. A history of widespread pain— that is pain in all quadrants of the body (the right and left sides of the body both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine or low back)— that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.

2. At least 11 positive tender points on physical examination . . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist . . . .

3. Evidence that other disorders that could cause the symptoms were excluded . . . .

*Id*. at *2–*3. Under the 2010 ACR criteria, fibromyalgia may be found to constitute a medically determinable impairment if a claimant has documented evidence of the following three issues:

1. A history of widespread pain (as defined in the 1990 ACR criteria above).

2. Repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, irritable bowel syndrome, and  or signs, such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome . . .

3. Evidence that other disorders that could cause the symptoms were excluded
. . . .

*Id*. at \*3. Plaintiff appears to assert that ALJ Meade erred because she meets the 2010 criteria. (Pl.'s Statement of Errors 14–15, ECF No. 11.) Specifically, Plaintiff asserts that there is "substantial evidence of widespread pain throughout [Plaintiff's] medical record despite ongoing treatment and medications" and that "the record consistently documents six or more fibromyalgia symptoms, signs, or co-occurring conditions . . . ." (*Id*.)

The undersigned disagrees. At step two, ALJ Meade accurately recited the criteria for both the 1990 ACR and 2010 ACR criteria. (R. 16.) ALJ Meade then determined that Plaintiff did not meet either standard explaining as follows:

> In this case, the claimant's rheumatologist, Dr. Samuel, referred to the claimant's pain as fibromyalgia during treatment (Exhibits 12F/22, 17F/12). However, despite this diagnosis, the medical records fail to satisfy the criteria set forth in SSR 12-2p. While Dr. Samuel conducted tender point examinations, they did not indicate that at least 11 tender points were consistently present (Exhibits 8F/3, 8; 12F/24; 16F/4, 7; 17F/9, 14). There is also insufficient documentation that other disorders have been ruled out. Dr. Samuel suggested that the claimant's symptoms might be due to degenerative disc disease or medication side effects (Exhibit 8F/4, 9). Finally, while the claimant alleged fatigue secondary to fibromyalgia and was treated for depression related to the death of her son, there is no evidence supporting that she suffers from repeated manifestations of six or more constitutional symptoms associated with fibromyalgia. Accordingly, pursuant to SSR 12-2p, the undersigned finds that the claimant's alleged fibromyalgia is not a medically determinable impairment.

(R. 17.)

As this discussion shows, ALJ Meade determined that Plaintiff did not meet the 2010 criteria because even though Plaintiff alleged fatigue and was treated for depression after the death of her son, the record evidence did not show that she suffered from repeated manifestations of six or more constitutional symptoms associated with fibromyalgia. (R. 17.) Substantial evidence supports that determination.

7

For instance, Plaintiff asserts that the record consistently documents her fatigue—a constitutional sign or symptom of fibromyalgia. (Pl.'s Statement of Errors 15, ECF No. 11.) Some of the record evidence cited by Plaintiff in support of this assertion appears to pre-date the alleged date of onset. (*Id.*) A review of the record also reveals that although Plaintiff reported suffering from fatigue on a handful of occasions after her alleged date of onset (R. 835, 820, 980), she more regularly reported no fatigue, or denied fatigue, after that date (R. 752, 758, 828, 830, 806, 866, 871, 913, 899, 909, 905, 927, 932).

Plaintiff also asserts that she suffered from co-occurring conditions of depression and anxiety. (Pl.'s Statement of Errors 15, ECF No. 11.) ALJ Meade observed, however, that even though Plaintiff was treated for depression, it appeared to be related to the death of her son. (R. 17.) The record supports that observation given that Plaintiff was referred to counseling by her primary care doctor in May 2017 after she continued to struggle with her son's death from a heroin overdose approximately 18 months prior. (R. 875.) Moreover, the record does not consistently document that Plaintiff suffered from anxiety. On January 24, 2017, Plaintiff complained of anxiety (R. 835), but an examination that day found that Plaintiff's mood, affect, and behavior were normal (R. 836). Examinations on March 27, July 25, and October 31, 2017, found that Plaintiff had normal mood and affect, and no anxiety. (R. 828, 897, 900.) On October 3. 2017, and January 9, 2018, Plaintiff reported that she was negative for anxiety. (R. 886, 946.) Examinations on February 12 and 25, 2020, also found that Plaintiff had no diffuse anxiety. (R. 981, 925.)

Similarly, Plaintiff asserts that there is consistent documentation of headaches throughout her medical record. (Pl.'s Statement of Errors 15, ECF No. 11.) But the record reflects that after the alleged date of onset, Plaintiff reported experiencing headaches on only one occasion—

January 24, 2017 (R. 835, 841, 852), and that medical records instead referred to Plaintiff having had a past history of headaches (*See e.g.*, R. 871, 883, 903). The record also documents that Plaintiff routinely denied headaches after her alleged date of onset. (R. 752, 758, 899, 975.)

Plaintiff asserts that the record consistently documents abdominal pain, GERD, and IBS. (Pl.'s Statement of Errors 15, ECF No. 11.) But there are only two references to IBS in the record. On February 25, 2019, Plaintiff reported frequent diarrhea without abdominal pain or cramping. (R. 975.) An examination that day found that her abdomen was soft and non-distended with normal bowel sounds, and that she had no abdominal brut, masses, cva tenderness, guarding, or rebound. (*Id.*) The "Assessment/Plan" that day was IBS with diarrhea, and Plaintiff was referred to a gastroenterologist. (R. 976). One year later, Plaintiff again reported frequent diarrhea without abdominal pain or cramping. (R. 980.) An examination on that day revealed identical findings and Plaintiff was again referred to a gastroenterologist. (*Id.*) But it does not appear that Plaintiff ever sought such treatment. In addition, no record evidence reflects that Plaintiff suffered from GERD or abdominal pain. Indeed, Plaintiff routinely denied abdominal pain. (R. 835, 831, 899.) Abdominal examinations also routinely found that Plaintiff's abdomen was soft (R. 760, 748, 807, 971), and that she had no tenderness (R. 748, 831, 836, 807, 822, 971); guarding (R. 831, 822); distension (R. 836, 807); or masses (R. 748, 831, 822).

Nor does the record consistently document cognitive or memory problems after the alleged date of onset despite Plaintiff's allegations to the contrary. (Pl.'s Statement of Errors 15, ECF No. 11.) After the alleged date of onset, Plaintiff reported that she was negative for confusion (R. 753, 770), and although one examination found that her recent memory was poor (R. 875), other examinations found that her recent and remote memory were both intact (R. 796), and that her concentration was good (R. 175, 796).

Plaintiff asserts that the record consistently documents muscle weakness. (Pl.'s Statement of Errors 15, ECF No. 11.) That does not accurately characterize the record evidence. Although Plaintiff reported that she was positive for muscle weakness on January 24, 2017 (R. 835), an examination that day, and on February 14, 2017, found that she had normal muscle tone and coordination (R. 803, 807). At treatment appointments, Plaintiff also routinely denied muscle weakness (R. 806, 871, 913, 909, 905, 927); weakness in her lower extremities, hands, and knees (R. 882); weakness in her hands (R. 943); and progressive weakness (R. 889). A consultative examination on March 6, 2017, found that Plaintiff had no loss of muscle mass, tone, motor strength, or sensation. (R. 822.) On July 25, 2017, muscle strength testing found that Plaintiff had full resistance to opposition in her lower extremities. (R. 897.) And on October 3, 2017, and January 9, 2018, Plaintiff's strength was 5/5 in her upper and lower extremities bilaterally. (R. 886, 947.)

The record also fails to consistently document other signs or symptoms to which Plaintiff refers, including excessive sweating, easy bruising, frequent urination, and itching. (Pl.'s Statement of Errors 15, ECF No. 11.) Plaintiff denied sweating after the alleged date of onset (R. 974, 980). Plaintiff reported easy bruising on one occasion after the alleged date of onset (R. 835, 841, 852), but twice reported that she was negative for easy bruising (R. 885, 946, 953). Moreover, the record contains no evidence of frequent urination or itching. Instead, the record shows that Plaintiff denied increased urination at least once after the alleged date of onset. (R. 980.)

Plaintiff also makes passing reference to the record consistently documenting "[t]ender points throughout her body . . . . " To the extent Plaintiff is attempting to assert that ALJ Meade erred by failing to find that she met the 1990 criteria, this assertion is underdeveloped. In any

event, the undersigned finds that such an assertion lack merit. ALJ Meade correctly explained that Plaintiff's treating rheumatologist, Dr. Samuel, did not consistently find at least 11 tender points during tender point examinations. (R. 17.) Substantial evidence supports that determination. On January 24, 2017, Dr. Samuel's examination found only two tender points. (R. 802.) On February 14, 2017, May 31, 2018, August 24, 2018, and November 6, 2018, Dr. Samuel found only four tender points. (R. 807, 928, 933, 962.)

Moreover, ALJ Meade determined that Plaintiff's fibromyalgia did not constitute a medically determinable impairment—under either the 2010 or the 1990 criteria—because the record did not establish that other disorders that could have caused her symptoms had been ruled out. (R. 17.) The record generally supports that determination as well. On at least three occasions, Dr. Samuel wrote that Plaintiff's pain could be related to possible fibromyalgia or it could be a side effect of a statin medication that she had been prescribed. (R. 808, 873, 914.)

In short, ALJ Meade offered record-based reasons supported by substantial evidence for finding that Plaintiff's fibromyalgia did not constitute a medically determinable impairment. Accordingly, the undersigned does not find that ALJ Meade committed reversible error at step two.

## B.     ALJ Meade's RFC

Plaintiff also alleges that ALJ Meade's RFC determination is not supported by substantial evidence because ALJ Meade erred when evaluating medical opinion evidence from Plaintiff's treating physician and from the state agency reviewing psychologists. This contention of error likewise lacks merit.

11

### 1. Treating Physician, Dr. Hart

An ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. §§ 416.927(c); 404.1527(c).[4] The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. §§ 416.927(a)(1); 404.1527(a)(1). For claims filed before March 27, 2017, "[a]cceptable medical source" is further defined via specific enumeration of five such sources. 20 C.F.R. §§ 416.902(a)(1); 404.1502(a)(1) ("Acceptable medical source means a medical source who is a: (1) Licensed physician . . . (2) Licensed psychologist . . . (3) Licensed optometrist . . . (4) Licensed podiatrist . . . (5) Qualified speech-language pathologist . . . .").

The relationship between the source of a medical opinion and a claimant "dictates the process by which the Commissioner accords it weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has explained as follows:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Id.*, at 375.

---

[4] Plaintiff's applications were filed in November 2016. (R. 365–71, 372–78.) Accordingly, they are governed by regulations applicable to claims filed prior to March 27, 2017.

For claims like Plaintiff's, filed prior to March 27, 2017, a treating source is defined as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.927(a)(2); 404.1527(a)(2). An ALJ generally gives deference to opinions from a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); § 404.1527(c)(2). *See also Blakley*, 581 F.3d at 408. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 416.927(c)(2); 404.1527(c)(2).

If an ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* In addition, the regulations provide that where an ALJ does not assign controlling weight to a treating physician, he or she must explain the weight assigned to the opinions of the medical sources. 20 C.F.R. §§ 416.927(c); 404.1527(c). The regulations provide that in such circumstances, an ALJ must "always give good reasons in [the ALJ's] notice of determination or

decision for the weight [the ALJ] give[s] your treating source's opinion." *Id*. Accordingly, the

ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation

omitted). The Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that his
> physician has deemed him disabled and therefore "might be especially bewildered
> when told by an administrative bureaucracy that she is not, unless some reason for
> the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).
> The requirement also ensures that the ALJ applies the treating physician rule and
> permits meaningful review of the ALJ's application of the rule. *See Halloran v.
> Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when

the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of

Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no

requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the

written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)

(indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly

address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion

evidence within the written decision).

Regardless of the source, when weighing a medical opinion, the ALJ must consider the

factors set forth in 20 C.F.R. § 416.927(c) and 404.1527(c), which include the examining and

treatment relationship, supportability of the opinion, consistency of the opinion with the record as

a whole, and the specialization of the source. 20 C.F.R. §§ 416.927(c); 404.1527(c). But the

"good reason" requirement does not apply where a medical source has not treated the

claimant. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

14

Here, ALJ Meade first summarized Dr. Hart's July 24, 2020 opinion as follows:

> The claimant's primary care provider, Timothy Hart, M.D., opined the claimant can lift and carry less than 10 pounds occasionally and frequently; stand and walk a total of less than 2 hours in an 8-hour workday; and sit a total of less than 6 hours in an 8-hour workday (Exhibit 21F). She has a limited ability to push and pull with the lower extremities (Id). She is unable to raise her arms overhead (Id). She can never climb ramps, stairs, ladders, ropes, and scaffolds (Id). She can occasionally balance, stoop, and crouch (Id). She can never crawl and kneel (Id). She has a limited ability to reach in all directions (including overhead), finger, and feel (Id). She should avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation (Id). She should avoid all exposure to vibration and hazards (Id).

(R. 22–23.) ALJ Meade then determined that he did not find Dr. Hart's opinion persuasive. ALJ Meade explained:

> The undersigned finds Dr. Hart's assessment is not persuasive because the excessive limitations are inconsistent with objective medical evidence. The claimant's osteoarthritis and degenerative disc disease have been treated conservatively with Cymbalta and an injection (Exhibits 8F, 12F, 14F, 17F, 18F). The assessment is not supported by the mild objective evidence. Physical examinations have shown moderate tenderness and decreased range of motion in the cervical spine; no tenderness, motion limitations, or signs of impingement of the shoulders; moderate tenderness and restricted range of motion of the lumbar spine; no atrophy of the lower extremities; full range of motion in the hips, knees, and ankles; normal strength, sensation, and reflexes; negative straight leg raise; and a normal gait (Exhibit 14F/6). The undersigned notes that Dr. Hart is not a specialist. Instead, he is a family practice physician. Furthermore, he is not familiar with Social Security Administration programs or the evidence of record.

(R. 23.)

As this discussion demonstrates, ALJ Meade determined that Dr. Hart's opinion was not persuasive for several reasons. First, ALJ Meade determined that Dr. Hart's "excessive limitations" were not consistent with the objective medical evidence. (*Id*.) Specifically, ALJ Meade explained that Plaintiff's osteoarthritis and degenerative disc disease were treated conservatively with Cymbalta and an injection. (*Id*.) That determination is generally supported by the record. On October 30, 2017, Plaintiff received a sacroiliac joint injection. (R. 899.) Plaintiff

subsequently reported that the injection did not afford her relief. (R. 904, 922.) Nevertheless, the record demonstrates that Plaintiff was prescribed Cymbalta by her rheumatologist (R. 808, 870) who routinely wrote that Plaintiff was taking Cymbalta and that it was "helping her symptomatically" (R. 870, 912, 908, 904, 922, 926, 931, 960) and that clinically, her condition was improving (R. 872, 914, 910, 907, 925, 929); stable (R. 934); or stable even though she had complaints of pain (R. 962). Elsewhere in the determination, ALJ Meade also correctly noted that surgery had not been recommended for Plaintiff's osteoarthritis and degenerative disc disease. (R. 20–21.)

Second, ALJ Meade determined that Dr. Hart's opinion was not persuasive because it was not supported by the mild objective evidence. (R. 23.) ALJ Meade then cited a variety of medical findings that detracted from the supportability of Dr. Hart's excessive limitations. ALJ Meade noted that although physical examinations showed that Plaintiff had moderate tenderness and decreased range of motion in her cervical and lumbar spine, other examination findings were benign. (R. 23.) For instance, ALJ Meade explained that upon examination, Plaintiff had no tenderness, motion limitations, or signs of shoulder impingement. (*Id.*) And the record reflects that on October 3, 2017, and January 9, 2018, Plaintiff's shoulders were non-tender, her range of motion was full and painless in all planes, and she had no sign of shoulder impingement. (R. 886, 947.) In addition, other examinations routinely found that Plaintiff had no synovitis, tenderness, effusion, deformities, or movement limitation in her shoulders. (R. 802, 807, 872, 913, 910, 906, 924, 928.)

ALJ Meade also explained that mild objective evidence detracted from the supportability of Dr. Hart's opinions because Plaintiff had no atrophy of the lower extremities. (R. 23.) That accurately describes the record evidence, which reflects that on October 3, 2017, and January 9,

2018, examinations found that Plaintiff's lower extremities had no tenderness to palpitation, asymmetry, or atrophy. (R. 886, 947.)

ALJ Meade additionally indicated that Dr. Hart's opinion was not supported by mild objective findings because examinations found that Plaintiff had full ranges of motion in her hips, knees, and ankles. (R. 23.) That too is substantiated by the record, which reflects that examinations on October 3, 2017, and January 9, 2018, found that Plaintiff's ranges of motion in her hips, knees, and ankles were full and painless bilaterally. (R. 886, 947.) Other musculoskeletal examinations also found that Plaintiff had normal ranges of motion (R. 754, 770); no limits in range of motion testing (R. 823); and no synovitis, tenderness, effusion, deformities, or movement limitation in her feet (803, 807, 872, 914, 910, 906, 924, 928, 933, 962).

ALJ Meade also noted that mild objective evidence detracted from the supportability of Dr. Hart's opinion because examinations found that Plaintiff had normal strength, sensation, and reflexes. (R. 23.) And the record shows that examinations on October 3, 2017, and January 9, 2018, found that Plaintiff had 5/5 muscle strength in her upper and lower extremities bilaterally, she had no focal deficits to light touch, pinprick, or proprioception, and her muscle stretch reflexes were 2+ and symmetric at her biceps, triceps, brachioradialis, patella, and achilles. (R. 886, 947.) Other examinations support this determination. A March 6, 2017 consultative examination that found that Plaintiff had no loss of muscle mass, tone, motor strength, or sensation. (R. 822.) On July 25, 2017, muscle strength testing found that Plaintiff had full resistance to opposition in her lower extremities. (R. 897.)

In addition, ALJ Meade explained that Dr. Hart's opinion was not supported by mild objective findings because the record reflects that straight leg raising tests were negative and that Plaintiff had a normal gait. (R. 23.) Again, this accurately describes the record evidence.

Examinations routinely found that Plaintiff had negative straight leg raising tests bilaterally (R. 803, 807, 872, 914, 910, 906, 924, 928, 933, 962.) Other examinations found that Plaintiff walked with a normal gait (R. 823); and that her gait reflected a normal base of support with a swing through pattern, she had no antalgia, and she did not use an assistive device (R. 886, 947).

Finally, ALJ Meade determined that Dr. Hart's opinion was not persuasive, in part, because Dr. Hart was a family practitioner, and not a specialist, who was unfamiliar with the Social Security regulations. (R. 23.) Specialization is one of the regulatory factors that an ALJ considers when weighing opinion evidence. §§ 416.927(c); 404.1527(c). Nothing in the record suggests that Dr. Hart was anything other than an M.D. who practiced family medicine.

In short, the undersigned finds that ALJ Meade relied on a number of record-based reasons for deciding that Dr. Hart's opinion was not entitled to controlling weight. Plaintiff, however, asserts that ALJ Meade's was "brief, at best" and relied on "one other doctor's evaluation of [Plaintiff], on one specific date." (Pl.'s Statement of Errors 7, ECF No. 11.) It is true that ALJ Meade explicitly cited only one medical record when weighing Dr. Hart's opinion. (R. 23.) Nevertheless, ALJ Meade discussed and cited other records and medical findings in detail and at length in the rest of the determination. (R. 20–22.)

Plaintiff also asserts that ALJ Meade failed to discuss all the regulatory factors, including the length, nature, and extent of the treating relationship between Plaintiff and Dr. Hart. (Pl.'s Statement of Errors 8, ECF No. 11.) But even though an ALJ is required to consider all six regulatory factors, an ALJ is not required to set forth an "exhaustive "factor-by-factor analysis" in a determination. Here, ALJ Meade addressed the fact that Dr. Hart's extreme opinion was inconsistent with conservative treatment, unsupported by objective medical findings, and that Dr. Hart was not a specialist. (R. at 23.) In short, AL Meade's determination was sufficiently specific

18

to make it clear to a reviewer why Dr. Hart's opinion was discounted. That is all that the governing regulations require. Accordingly, the undersigned finds that ALJ Meade did not commit reversible error when weighing Dr. Hart's opinion and that Plaintiff's contention of error lacks merit.

### 2. State Agency Reviewing Psychologists

Plaintiff also alleges that ALJ Meade erred when evaluating opinion evidence from the state agency reviewing psychologists. Specifically, Plaintiff maintains that ALJ Meade found that their opinions were persuasive, but then failed to incorporate all of their opined limitation into Plaintiff's RFC or explain why certain opined limitations were omitted. This assertion lacks merit.

"[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.,* 832 F.Supp. 2d 813, 823–24 (S.D. Ohio 2011). This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.;* 20 C.F.R § 416.927(d),(f). "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas,* 832 F. Supp. 2d at 823–24. Nevertheless, "[even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's opinions wholesale." *Price v. Comm'r of Soc. Sec.*, 2:18-cv-128, 2019 WL 396415, at *2 (S.D. Ohio Jan. 31, 2019) (quoting Reeves v. Comm'r of Soc. Sec., 618 F.App'x 267, 275 (6th Cir. 2015)). Nor is there a "legal requirement for an ALJ to explaine each limitation or restriction he adopts, or conversely, does not adopt from a non-examining

physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford v. Comm'r of Soc. Sec*, 114 F. App'x. 194, 198 (6th Cir. 2004.))

Here, ALJ Meade began by summarizing the opinions from the state agency psychological reviewers, Jennifer Meyer, Ph.D., and Kay Barnfeld, Psy.D.

> State agency psychologists, Jennifer Meyer, Ph.D., and Kay Barnfield, Psy.D., opined the claimant is capable of working without excessive supervision or assistance and working with others, and of sustaining attention to complete simple, repetitive tasks for 2-hour segments over an 8 hour workday (Exhibits 3A, 4A, 7A, 8A). She would be capable of completing simple repetitive tasks in most settings and adapting to simple/gradual changes in the work environment (Id).

(R. 23.) ALJ Meade then explained that these opinions were persuasive. He wrote as follows:

> The undersigned finds the assessments by Dr. Meyer and Dr. Barnfield are persuasive because they are consistent with the treatment. The evidence shows the claimant's major depressive disorder and posttraumatic stress disorder have managed conservatively with medication (Exhibits 13F, 15F, 20F). She has not required emergency room or inpatient treatment for her mental impairments. The assessments are also supported by the objective findings. Her primary care provider noted normal mental status examinations in October 2017, February 2019; and February 2020 (Exhibits 15F/9; 20F/11, 17). She displayed good attention and concentration; intact immediate, recent, and remote memory; good judgment and insight; an appropriate mood; good affect; normal decision making and coping skills; and good social maturity during consultative examination (Exhibit 7F).

(R. 23.)

Plaintiff does not challenge the weight that ALJ Meade assigned to these opinions. Instead, as previously explained, Plaintiff asserts that ALJ Meade erred because he did not incorporate all the opined limitations or explain why some of them were omitted. Specifically, Plaintiff asserts that the state agency reviewers noted that Plaintiff "would have difficulty maintaining attention and concentration" and "difficulty performing at a consistent pace without

interruptions." (Pl.'s Statement of Errors 11, ECF No. 11.) But as the Commissioner points out, the opinions from the state agency reviewer's official opinions were contained in the narrative sections following categories of limitations on the forms that they used and in the "Additional Explanation" sections of those forms. (R. 101, 117, 135, 151.) Indeed, the form makes it clear that that the limitations identified by Plaintiff are not part of the state agency reviewers' official opinions. *See Shepard v. Colvin*, No. 3:12CV00149, 2013 WL 2179366, at *12–13 (S.D. Ohio May 20, 2013), ("Section I of the form is merely a worksheet for the evaluator and does not constitute the evaluator's residual functional capacity."), *report and recommendation aff'd*, No. 3:12-CV-149, 2013 WL 3053533 (S.D. Ohio June 17, 2013). In the official section, the state agency reviewers opined that even though Plaintiff may have such difficulties, she was nevertheless "capable of working without excessive supervision or assistance and working with others, and of sustaining attention to complete simple, repetitive tasks for 2-hour segments over an 8 hour work day." (R. 101, 117, 135, 151.)

Plaintiff also asserts that the state agency reviewers opined that Plaintiff "may require flexibility in his [*sic*] breaks . . . ."  (Pl.'s Statement of Errors 11, ECF No. 11.) Although unclear, Plaintiff might be attempting to assert that ALJ Meade erred because the state agency reviewers opined that she was able to work without excessive supervision and concentrate for "2-hour segments over an 8 hour work day" and that this meant that they had opined that she required breaks every two hours such that ALJ Meade was therefore required to incorporate such a break limitation into her RFC or explain its omission. To the extent Plaintiff makes such an assertion, the undersigned finds that any alleged failure to include a two-hour limit does not constitute reversible error because "breaks every two hours are to be expected in most jobs." *Mallott v. Colvin*, Civil Action No. 5:13-305-DCR, 2014 WL 2574520, at * 8 (E.D. Ky. June 9, 2014)

(citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (explaining that "[b]ecause the breaks that were recommended by [medical sources] are assumed in most jobs, any omission on the part of the ALJ . . . is harmless")). Accordingly, even if ALJ Meade was required to adopt every limitation opined by the state agency reviewers (although he was not), this allegation of error lacks merit.

## V.     RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination.

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE